UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

| | |
|---|---|
| JUSTIN H NULAND,<br>                    Plaintiff,<br><br>v.<br><br>SOUTH SHORE HOSPITAL, SOUTH<br>SHORE MENTAL HEALTH, MEDICAL<br>RECORD ASSOCIATES, LLC, Jason A<br>TRACY, MD; Wayne A CHIN, MD;<br>Kenneth McLaughlin, MD; Justin<br>Briones, MD; John Walsh, MD; Jeffrey<br>Johnson, MD; Linda Worcester, MD;<br>Julie Mitterando, MD; Gloria Holyoke,<br>RN; Kyle McAlpine, RN; Cheryl Smith,<br>RN; Courtney Barbetto, RN; Fiona<br>Bitteker; RN; Sheila McBride, RN;<br>Jillian McCarthy, RN; Sarah C Ralston,<br>RN; Judith A Richards, RN; Melissa E<br>Constantino, RN; Cathleen Pierce, RN;<br>Diane Logan, RN; Stacy Lucier, RN; Paul<br>Zaborski, RN; Sharon L Stemm, RN;<br>Jennifer Poweel, RN; and Dianne Bryan,<br>RN;<br>                    Defendants, | **COMPLAINT FOR:**<br>1. **MEDICAL MALPRACTICE AND<br>   NEGLIGENCE**<br>2. **ASSAULT & BATTERY**<br>3. **FALSE IMPRISONMENT**<br>4. **NEGLIGENT INFLICTION OF<br>   EMOTIONAL DISTRESS**<br>5. **VIOLATION OF OF RIGHT TO<br>   PRIVACY** |

# COMPLAINT

## JURISDICTION

1. The United States District Court for the District of Massachusetts has jurisdiction to hear Plaintiff's civil action under 11 U.S.C. § 1332 (a)(1), under diversity jurisdiction, since the Plaintiff is a Rhode Island resident, and most, if not all, Defendant health care providers are headquartered in Massachusetts or residents of Massachusetts, and the amount in controversy and likely recovery is over $75,000.00.

## PARTIES

2. Plaintiff Justin H. Nuland ("Plaintiff" or "Patient"), resides at 404 Roosevelt Avenue, Unit 202 in the City of Central Falls, State of Rhode Island and Providence Plantations, 02863.

3. Defendants South Shore Hospital and South Shore Mental Health are medical services providers located in Norfolk County, Massachusetts. Their principal place of address is 55 Fogg Road, South Weymouth, Massachusetts.

4. Defendant Medical Record Associates, LLC, is a Massachusetts corporation with a principal place of business at Post Office Box 88, Milton, Massachusetts 02186-0002.

5. Defendants Tracy, Chin, McLaughlin, Briones, Walsh, Johnson, Worcester, Mitterando, Holyoke, McAlpine, Smith, Barbetto, Bitteker, McBride, McCarthy, Ralston, Richards, Constantino, Pierce, Logan, Lucier, Zaborski, Stemm, Poweel, and Bryan are medical professionals (nurses or physicians) employed in the Commonwealth of Massachusetts. Upon information and belief, Plaintiff submits that many, if not all, named defendants reside in Massachusetts.

6. There are Defendants whose identity may be unknown to Plaintiff at this time, yet Plaintiff believes that the Court will have jurisdiction over later-named and added parties since all events

in this matter took place in Massachusetts.

## STATEMENT OF THE FACTS AND CASE

### I.   Introduction.

1.  Plaintiff Justin Nuland ("Patient") brings this civil action against South Shore Hospital, South Shore Mental Health, and the physicians and nurses that treated Patient while he was involuntary held against his will at the two hospitals.

2.  For a one-week period in January 2012, Patient was held against his will, in seclusion and forced to take high-dose psychotropic drugs.

3.  During this one week-long seclusion, treating nurses and physicians (the named and identified defendant in this medical malpractice and negligence case) deviated from generally accepted and safe medical treatment practices, and in fact, engaged in dangerous treatments and administered dangerous levels of high-dosage and strong drugs that caused the Patient to lose control of his body and free will.

4.  When Plaintiff was admitted to South Shore Hospital and South Shore Mental Health, neither hospital conducted a thorough evaluation and diagnosed him with any illnesses.  Instead, the doctors, nurses and South Shore Hospital and Mental Health entirely relied upon the false, malicious, and incorrect medical information provided by James Nuland, the Plaintiff's father.  None of the defendants reviewed Plaintiff's medical history or performed an independent evaluation on him prior to treating him.  As a direct result, the treatment was wrongly administered, against the Plaintiff's consent, and resulted in significant harm and damages.

5.  During this treatment, the treating nurses and physicians administered medications and treated the Patient at a level far below what is commonly and generally accepted within the medical

community, and within the Eastern Massachusetts region.

6. During observation periods while the Patient was secluded and over-medicated, treating nurses and physicians created inaccurate observations for reports, and did not accurately record the Patient's pain, loss of consciousness and inability to voluntarily move his body, or the fact that he was requesting to speak with an attorney and requested to be discharged from the Defendant South Shore Hospital.

7. The Patient did not need large amounts of psychotropic drugs, and did not need to be secluded or restrained.

## II.     Initial Commitment.

8. Patient initially arrived at South Shore Hospital on or about January 6, 2012, between 10:00 and 11:00 p.m.  Patient voluntarily presented himself to South Shore Hospital for physical and psychiatric evaluation.  He was in good health, but presented himself voluntarily for an evaluation.

9. When the Patient initially arrived at South Shore Hospital, he was in good health and did not require invasive medical treatment.  Most importantly, Patient did not provide consent for treatment at South Shore Hospital.  Instead, the Patient expressly withheld consent and stated to treating physicians and nurses that he did not want to be treated, secluded, or drugged.

10. Since Patient came to the hospital for an evaluation by his own free will and choice, he was appropriately admitted under "Voluntary Admission Status" as defined in the Massachusetts Code of Regulations: 104 CMR 27.09(2).

11. Since the Plaintiff was admitted under "Voluntary Admission Status," the Defendant health care providers were required to discharge the Patient and allow him to leave upon his request.

12. Instead of performing an independent evaluation on Plaintiff, the admitting doctor Wayne Chin relied solely on the incorrect and malicious statements of his father, who arrived at South Shore Hospital with the Plaintiff.

13. Medical records show that South Shore Hospital and Dr. Wayne Chin relied upon false statements in admitting Plaintiff and deciding what course of treatment to administer. Specifically, Plaintiff's father, outside of Plaintiff's presence, informed Dr. Chin that he believed his son was bipolar, manic, suffering from a severe episode, had an extensive criminal record and was a danger to himself. Instead of verifying this information, Dr. Chin accepted the false information and relied upon it to admit Plaintiff.

14. Dr. Chin then relied upon those statements to treat Plaintiff as if he was a bipolar person who was manic and suffering from a severe episode. He was not. After being treated at South Shore Hospital and Mental Health, Patient was transferred to Tufts Medical Center, Floating Hospital for Children. On the report, it specifies that the main reason the Patient was admitted was because "Patient was initially admitted because his father thought the patient appeared manic. On presentation to TMC [Tufts Medical Center], however, the patient did not appear manic...."

15. Once the Patient was admitted, Defendant health care providers incorrectly diagnosed the patient and immediately placed him in seclusion, and gave him a heavy dose of medication that caused him to be chemically restrained against his will.

16. Seclusion is only appropriate where the Patient presents a danger to either himself or another person. There were no records or doctor's notes in Patient's medical records that indicate the Patient was a danger to himself or others. Further, on certain forms where the Patient was

evaluated, the box where a treating nurse or physician would check and affirm that the Patient
was a danger to himself or others was unmarked or not checked.

17. Since the Patient was admitted, and misdiagnosed and mistreated, Defendant South Shore
Hospital and its nurses and physicians kept Patient in seclusion against his will and unlawfully.  In
addition, the defendant health care providers kept the Patient on a heavy dose of psychotropic
medications and under chemical restraint.

18. Chemical restraint is the administration of medication for the purpose of limiting the physical
freedom of an individual, and then temporarily controlling the behavior of a Patient by chemical
means.

19. The seclusion and chemical restraint lasted from 1/7/12 at 2:00am until 1/14/2012 at 2:30pm; a
total of 7 days, 12 hours, and 30 minutes.

III.    **Treatment While At South Shore Hospital.**

20. The Patient was treated for a one-week period of time at South Shore Hospital and South
Shore Mental Health.  During this period of time, the defendants did not seek court permission
for involuntary commitment (commonly referred to as a 12(b) petition) or permission to admit
the Patient against his will for being a danger to himself or others.

21. During the period of seclusion, Defendant health care provider and its nurses and physicians
administered, without Plaintiff's consent, various medications, including, but not limited to
lorazepam (29 times), haloperidol (26 times), and olanzapine (4 times).

22. One the first day of his treatment, the defendants administered no less than six (6) times
medicine through a syringe against the Patient's protest.  The treatments were painful,
embarrassing and the Patient felt violated.

23. During future treatments, the defendant doctor and nurses threatened to administer drugs to the Patient by way of syringe if he did not take his medicine orally. In order to execute these threats, the defendants would brandish a syringe in front of the Patient, and order the vials of medicine to load the syringe and wave it in his face threatening to stick him with it unless he took his medicine orally.

24. During the week-long period of seclusion and chemical restraint, Defendant health care providers recorded their observations on forty-six (46) different "PHYSICIAN ORDER FOR PEDIATRIC/ADULT RESTRAINTS/SECLUSION BEHAVIORAL INDICATION" forms (hereinafter referred to as "seclusion orders"). **EXHIBIT A** - Summary & Seclusion forms.

25. Defendants recorded the administration of Medication on "eMAR Administration Report" forms.

26. Throughout his confinement at South Shore Hospital, Defendant nurses and physicians authorized and ordered the Patient's continued restraint and seclusion document by way of 46 different seclusion orders.

27. During the period of seclusion and chemical restraint, the Patient slipped in and out of consciousness due to the high dosage of drugs administered. For periods that the Patient was awake and coherent, he requested an attorney and to be discharged from South Shore Hospital. He also expressly stated that he did not consent to be treated and wanted to be discharged from the South Shore Hospital.

28. Despite the Patient's continued requests to be released, discharged, or speak to an attorney about his rights, the defendant's continue to mistreat the Patient and keep him under seclusion and chemical restraint.

29. Despite Patient's loud and clear protests and demands to be discharged, eighteen (18) of the forty-six (46) seclusion orders stated that the "patient remains stable" and had "no new complaints."

30. When the Defendant South Shore Hospital and other medical providers attempted to obtain consent for treatment, the Patient expressly refused to sign the patient authorization and consent form, and repeatedly objected to being held and medicated against his will.

31. When the Patient was presented with a form to consent to treatment, he refused and was unable to sign. The consent forms contains the following statement "too anxious to sign," indicating no consent was provided

32. Prior to placing the Patient under strict seclusion, confinement, and under a heavy dose of chemical restraint, the Defendant South Shore Hospital and its nurses and physicians did not explore less invasive or less restrictive options to treat the Patient.

33. No less restrictive options were attempted by Defendants before opting for chemical restraint.

34. No less restrictive options were attempted by Defendants before seeking seclusion.

35. Plaintiff was both chemically restrained and in physical seclusion at the same time.

36. No authorization was provided to Defendants from district or probate court for the administration of antipsychotic or anxiolytic medication.

37. Plaintiff was subjected to medication restraint by Defendants on at least 59 occasions. See **EXHIBIT A** - Summary & Seclusion forms.

38. During Plaintiff's restraint and seclusion, there are 18 emergency department dictations starting from 1/8/2012 at 07:48 a.m. until 1/14/2012 at 1:57 p.m. stating that "patient remains stable"

39. The Defendant's notes on the many medical records show that the patient was stable and did

not need to be drugged or restrained by chemical means.

40. At 12:00 p.m. on 1/8/2012, Defendant South Shore Hospital, and the nurses and physicians treating the Patient decided to hold the Patient against his will, despite no indication on seclusion order forms that he was a danger to himself or others.

41. The Defendant health care providers did not make any note on the forty-six (46) restraint and seclusion forms of release conditions, discharge requests, objections to treatment, or anything that would indicate how or when the Patient could and would be released.

42. Since the Patient was kept under seclusion and chemical restraint against his will, his treatment was involuntary. Massachusetts law requires a health care provider to file and move for involuntary commitment (12(b) petition) in court after a three (3) day observation period.

43. In this case, the three day observation period from the time of involuntary admittance expired on January 11th 2012, but only if the Defendant filed an appropriate 12(b) involuntary commitment petition. The Defendants did not file an involuntary commitment petition against the Patient as required to seclude and restrain someone against their will.. See M.G.L. c. 123, §12(b).

44. Defendant's did not file or move in Court for involuntary commitment (also referred to as Civil Commitment), and did not receive any Court order or permission to hold the Patient beyond three (3) days.

45. In order to comply with Massachusetts law, Defendant health care providers would have had to file for involuntary commitment and schedule a commitment hearing *prior* to the end of business on the 11th.

46. Defendants never filed for involuntary commitment and a commitment hearing was not held for the Patient.

47. Following four (4) days of involuntary commitment, Patient was not discharged.

48. On day six (6) of the Patient's involuntary confinement, January 12, 2012, the Patient tried to leave South Shore Hospital. Security at South Shore Hospital grabbed the Patient, physically restrained him, and prevented him from leaving the hospital against his will.

49. Despite repeated requests, the Patient was not provided an opportunity to call an attorney, or talk to anyone at the Committee for Public Counsel Services ("CPCS" or commonly referred to as the Massachusetts Public Defenders). Patient was trying to contact an attorney at the public defender's office to contest his being detained, secluded, and heavily medicated against his will and without his consent.

50. In addition, Defendant health care providers did not afford any type of "complaint procedure" or allow the Patient to object to his being secluded, or chemically restrained.

51. Plaintiff was never allowed the option of an emergency judicial review.

52. The Patient's medical records also lack two key elements of review and keeping someone in treatment against their will: and "individual crisis prevention plan" and notes or comments from a "debriefing" on the Patient's overall treatment.

53. In addition to these glaring omissions that are a standard part of medical care and treatment evaluation, Defendant health care providers also never conducted or documented any "lack of competence" evaluation, nor did the Defendant health care providers have periodic reviews of his treatment and progress with relatives.

54. During the Patient's confinement at Defendant Health Care providers, he requested access to many things reasonable and necessary for his normal health, functioning and access to help, including: physical activity, being allowed to shower, outdoor access, access his cellular phone

and contacts, access to pens and writing materials, and ability to contact an attorney or representative who could help him get discharged.

55. During this time of seclusion and restraint, the Patient was aware his rights were being violated, and that he was being treated incorrectly and against his will. He specifically requested a pen and paper so he could document the wrong treatments, and issues with his confinement and seclusion.

56. During this time, Patient also made several request to contact a lawyer or a judge so he could be advised of his rights and do something or file something to petition to stop his being held against his will and confined.

57. All of the Patient's requests were denied by the Defendant health care providers and its nurses and physicians.

58. The Defendant South Shore Hospital, its nurses and physicians did not make note of the Patient's many requests for these reasonable items and calls in medical records or any supervision reports, and did not make note of his objections towards treatment. The Defendant health care providers also did not provide any reasonable reason or rational basis to deny the Patient's requests.

59. Defendant did not identify Plaintiff's particular patient-specific approaches and strategies that are most helpful to the patient in reducing agitation or distress (e.g., environmental supports, physical activity, sensory interventions); and

60. Defendant did not identify Defendant's preferences concerning restraint and seclusion, including type of procedure and positioning, gender of staff that administer and monitor the restraint or seclusion, and supportive interventions that may have a calming effect on the patient.

61. Defendants restrained and secluded Plaintiff for over 12 hours or a total episode exceeding 12 hours in a 48 hour period.

62. The facility director and facility medical director were not notified of Plaintiff's restraint and seclusion.

63. The Defendant's did not receive Patient's informed consent to the administering of antipsychotic medication.

64. The Defendants did not receive consent from Patient's legally authorized representative before administering psychotropic drugs and placing the Patient in seclusion.

65. Plaintiff was lawfully entitled to be discharged upon his request.

66. Defendants forced Plaintiff to wear a hospital gown without underwear.

67. Plaintiff was not fully clothed during time spent in seclusion.

68. Defendant's did not make any notations or findings that would justify refusing to adequately clothe the Patient. As a direct result of being forced to wear a thin hospital gown with no underwear, the Patient felt violated, unsafe, and that the Defendant health care providers had no response for his dignity.

69. As a result of these actions, the Patient was not provided maximum personal dignity.

70. Plaintiff asserted the right to an Emergency Judicial Review on many occasions, and the defendants failed to comply.

71. South Shore Hospital and Mental Health's Doctor's and Registered Nurses, as named in this complaint, and working for Defendant Hospitals, participated in actions that led to Plaintiff's harm. In an effort to document the instances of mistreatment and injuries, as well as violations of the generally accepted standard of care and treatment for doctors and nurses, Patient created

a spreadsheet that specifies the doctors and nurses and what treatment guidelines or code they

violated. This list of medical malpractice incidents citing the code (standard of case) is attached

as **EXHIBIT B - List of Doctors, Nurses and Medical Malpractice Instances**.

## IV.   Violation of Right To Privacy.

72. On or about February 20, 2014, Patient submitted a request to South Shore Hospital

requesting a copy of all of his medical records for treatment dates January 2, 2012 - January

23, 2013.

73. On Patient's request, he specified his Central Falls, Rhode Island address and specifically

requested that medical records be sent only to him.

74. In addition to this written specification, Patient called South Shore Hospital and expressly told

them to send his medical records to his Roosevelt Avenue, Central Falls, Rhode Island address.

75. During this conversation Plaintiff informed South Shore Hospital that the request was for a legal

purpose, and the matter was highly sensitive.

76. In response to this request, Defendant South Shore Hospital utilized an outside third-party

medical records vendor, Medical Record Associates, LLC, to compile the Patient's records.

77. On March 24, 2014, despite Plaintiff's written and oral instructions, South Shore Hospital and

Medical Record Associates, LLC, sent large packet of 80 pages filled with private medical

records, sensitive medical information to a different address: 213 Powder Point Avenue,

Duxbury, Massachusetts.

78. Plaintiff's father, the defendant in a current pending lawsuit, resides at this Powder Point

Avenue, Duxbury address.

79. More troubling is that Plaintiff later-received packet of medical records contained only 59

pages, 21 pages less than the unintended recipient.

80. South Shore Hospital and Medical Record Associates, LLC violated Plaintiff's right to privacy by sending confidential and sensitive medical records to an adverse party in a separate pending lawsuit.

81. As a direct result, the unintended recipient learned harmful, sensitive and embarrassing medical information about the Plaintiff. This sensitive information was not known by the unintended recipient prior to wrongly receiving the Plaintiff's confidential medical records.

82. Following this incident, South Shore Hospital sent a letter apologizing for violating Plaintiff's privacy. In this letter, South Shore Hospital used the words "error" and "misdirected" admitting to its fault and negligence. **EXHIBIT C** - South Shore Hospital Letter Admitting to Violating the Patient's Privacy.

83. South Shore Hospital and Medical Record Associates, LLC, violated the Health Insurance Portability and Accountability Act (HIPAA), which sets strict rules about patient privacy and the confidentiality of medical records.

## CAUSES OF ACTION

### COUNT 1

### NEGLIGENCE AND MEDICAL MALPRACTICE

84. Plaintiff realleges and restated all factual allegations contained in statements 1-83 herein.

85. In order to prevail on a Malpractice claim, the Plaintiff must first show that Defendant Doctors and Nurses performed their duties well below the acceptable standard for the like in the Commonwealth.

86. All defendant health care providers owed a duty of care to the Plaintiff Patient. As prescribed by Massachusetts law, all health care providers and licensed physicians and nurses are required to adhere to strict levels of quality medical care and treatment, and abide by these requirements when treating a patient. Since the Plaintiff Patient was in their care, they owed a duty directly to him to perform and administer medical care ordinarily exercised by the average qualified physician and nurse engaged in medical practice at a professional level

87. It is herein alleged that in this matter Plaintiffs deviated from the reasonable and prudent standard for the like in their profession including, but not limited to, following reasons:

    a. Defendant's committed 59 instances of malpractice relating to the administration of Haloperidol, Olanzapine, Lorazepam yet failed to comply with the requirements of M.G.L. c. 123, §8B(d)-(f), which govern the standards required to administer antipsychotic medication. Defendants unlawfully administered the drug Haloperidol no less than 26 times. Defendants unlawfully administered the drug Olanzapine no less than 4 times. Defendants unlawfully administered the drug Lorazepam no less than 29 times.

88. In addition to administering high-dose antipsychotic medications, South Shore Hospital, South Shore Mental Health, and its physicians and nurses seriously deviated from commonly accepted and safe medical practices when treating the Plaintiff. Specifically, he was treated against his will, not provided with informed consent for any of the treatments he received, held in seclusion, chemically restrained, and experienced significant pain and discomfort.

89. South Shore Hospital, South Shore Mental Health, and the named defendant physicians and nurses working at both South Shore health care providers were negligent in their care and treatment of the Plaintiff Patient, in that they all failed to treat him in accordance with the

standard of care and skill required of and ordinarily exercised by the average qualified physician
and nurse engaged in medical practice at a professional level, such as that in which the
defendant health care providers were engaged.

90. Defendants exceeded the time limits on restraint and seclusion as stated in 104 cmr
27.12(5)4(b)2 by 168.5 hours. As such, *Director* Defendants failed to inquire about the needs
for restraint and seclusions, any limits on these extreme treatments, and what conditions, if any,
would alleviate the need (if any actually existed in the first place) for restraints and seclusion..

91. Defendants failed to identify and implement strategies to facilitate release as soon as possible
and/or eliminate the use of multiple restraint episodes.

92. Defendants failed to perform a competence evaluation on the Plaintiff upon admittance, which is
common practice and prescribed under the Massachusetts Code of Regulations as standard
practice. By failing to perform a competence evaluation, the Defendant health care providers
deviated from standard medical practice and regulations that require a competency evaluation.

93. In addition to the normal level of care and treatment needed, the Massachusetts code of
regulations prescribes certain activities and requirements for the health, welfare and safety of
patients. Notably, these requirements include access to physical activity, fresh air/being allowed
outdoors, writing utensils and paper, and other necessary items.

94. Defendants violated 104 CMR 27.12(5)4(b)1 when Plaintiff was denied access to physical
activity. When the Patient was restrained and secluded, he was not allowed to engage in any
physical activity.

95. Defendants violated M.G.L 123 Section 23(b) & 104 CMR 27.13(5)(b) when they failed to
make writing materials in reasonable quantity available to plaintiff. In fact, on multiple

occasions, Patient requests pens and paper to record his treatment, and contact a public

defender or attorney to advise him of his rights against being involuntarily detained.

96. Defendants failed to conduct and/or provide Plaintiff with a debriefing within 24 hours after the

Plaintiff release as required by and in violation of 104 CMR 27.12(4)(b).

97. Defendant's failed to acquire consent, court order, or other lawful means by which to administer

antipsychotic medication to Plaintiff as required by 104 CMR 27.10(1)(b)

98. Defendants violated 104 CMR 27.09(2)[1] when they failed to discharge Plaintiff, who was

present on a voluntary admission status, upon his request that they do so.

99. Defendants violated 104 CMR 27.09(7)[2] regarding involuntary commitment when following 3

days of involuntary commitment.  Defendants also failed to obtain consent or court order for

such involuntary commitment.  Defendants then violated 104 CMR 27.12(c)(2) by failing to file

for involuntary commitment of Plaintiff.  During this involuntary commitment, Defendants violated

104 CMR 27.12 4(e)1a when they failed to generate and/or record a criteria for release

pertaining to restraint and seclusion of Plaintiff.   Defendants also violated 104 CMR 27.12

{(3)(a)(b)1.2.3} {(c)}(d) and 7.12(4)(a)1.2.3.4.5.6.7.9 when failed to generate and/or record

an individual crisis prevention plan for Plaintiff.

---

[1] (2) **Voluntary Admission** Status.
A patient voluntarily admitted to a facility under 104 CMR 27.06 shall be discharged without a requirement of a three day notice upon his or her request.

[2] (7) **Involuntary Commitment** Status.
    (a) **Three day commitment**. A person admitted to a facility under M.G.L. c. 123, § 12, may be discharged by the facility director at any time during such period of hospitalization if the facility director determines that such person is not in need of care and treatment in the facility. The four day hospitalization period authorized under M.G.L. c. 123, § 12 shall not be extended, and, at the end of such period, a person so hospitalized shall be discharged by the facility unless, prior to expiration, such person has applied for voluntary admission to the facility, or the facility director has filed a petition for an order of commitment.
    (b) **Prolonged Commitment**. A person committed to a facility by order of a court of competent jurisdiction shall be discharged by the facility at the expiration of the time period established by the order, unless the commitment order is renewed under the procedures established in M.G.L. c. 123, §§ 7 and 8.
    (c) At any time during the period of hospitalization, the facility director may discharge such person if he or she determines that such person is no longer in need of care and treatment.

100.    Most importantly, Plaintiff was denied any reasonable access to representation violating 104
        CMR 27.07(3) when they failed to notify the Commonwealth's public defenders or committee
        for public counsel services regarding the Plaintiff. Furthermore, Defendants violated M.G.L ch
        123, §12(b) when they failed to provide Plaintiff with the option of an Emergency Judicial
        Review.

101.    Defendants violated 104 CMR 27.12(5)(c)3 when they failed to allow Plaintiff to remain
        fully clothed during Plaintiff's time spent in seclusion.

102.    In sum, all of these violations and acts of negligence occurred when the Defendants were
        treating the Patient at a level far below that which is common, safe, and acceptable for
        physicians and nurses in Massachusetts. As a result, all defendant health care providers
        breached their duty of care to the Plaintiff Patient.

103.    As a direct result of the malpractice of defendant health care providers, Patient suffered
        severe mental anxiety, stress, emotional distress, and actual physical harm from being restrained
        and secluded against his will.


### COUNT 2

### ASSAULT & BATTERY

104.    Plaintiff realleges and restated all factual allegations contained in statements 1-103 herein.

105.    Battery is an intentional tort requiring that a defendant act, intending to cause contact with a
        plaintiff which is harmful or offensive, and that the defendant actually cause such contact.

106.    Here, Plaintiff Patient alleges that he was assaulted and battered by South Shore Hospital
        and South Shore Mental Health, as well as its authorized agents, the named defendant

physicians and nurses

107.    During his treatment at South Shore Hospital and South Shore Mental Health, Plaintiff
        Patient was physically restrained, grabbed by security, and physically restrained and forced to
        take medication against his will. All of these contacts were harmful and offensive, and certainly
        against the consent of Plaintiff Patient.

108.    When defendant health care providers did not have consent to administer harmful
        psychiatric drugs, their forced administration of those drugs constituted a battery.

109.    The assault is an inchoate offense that wraps into the battery the moment the apprehension
        cause by the brandishing of a needle became actual contact and administration of drugs

110.    Because Plaintiff Patient was under voluntarily admission, the procedures for his treatment
        were different than those under which medical professionals would be authorized to operate in
        an ambulatory situation. His seeking an evaluation (consent to evaluation) was not consent to
        treat, nor is there any signature of Mr. Nuland's consenting to any of the treatments detailed
        throughout this complaint.

111.    In fact, it is even noted on an admittance form that Justine was "too anxious to sign", thus
        indicating the Defendant's knew Justin Nuland did not assent to the treatment. Dr. Chin and
        the other staff at both South Shore Hospital and South Shore Mental Health were required to
        obtain Plaintiff Nuland's consent, and that as he was already an adult at the time (above the age
        of minority), his father's would not have sufficed

112.    The fact that the staff then proceeded to perform psychiatric procedures on him against his
        will and without informing him of the risks of such administration (notorious and multitudinous
        with newer psychiatric drugs) constitutes battery.

113.    Intravenous administration of psychiatric drugs is qualifying conduct, even if one sets aside

the context of the treatment and the Plaintiff's psychiatric history (probably not relevant due to

courts' reluctance to 'individualize' a reasonable plaintiff to much of an extent at all), because, in

the end, South Shore Hospital and its authorized agents performed procedures that interfered

with Plaintiff Nuland's right to bodily autonomy and freedom from physical incursion, the

underlying justification for the tort of battery.


### COUNT 3

### FALSE IMPRISONMENT

114.    Plaintiff realleges and restated all factual allegations contained in statements 1-113 herein.

115.    False imprisonment consists of the unlawful restraint against his or her will of an individual's

personal liberty or freedom of movement, accomplished with or without process of law. It is

also defined as the unlawful violation of the personal liberty of another, or the unlawful

deprivation of a person's liberty,  imposed by force or threats. It is detention without legal

process, or an arrest without reasonable grounds, and against one's will.

116.    When Plaintiff Patient voluntarily presented himself at South Shore Hospital for an

evaluation, he did not want to be detained, restrained, admitted, or held against his will.  During

his one-week confinement, Patient was held against his will, with the use of harnesses, restraints,

and chemical restraints to limit his movement.  He was confined to a small room, not freely

allowed to leave despite repeated requests.

117.    As a direct result of being falsely imprisoned at South Shore Hospital, and following after a

Tufts Health facility, the Patient suffered extensive emotional damage, physical injury, stress,

anxiety, and emotional distress.

## COUNT 4

### **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

118.    Plaintiff realleges and restated all factual allegations contained in statements 1-117 herein.

119.    All defendant health care providers owed a duty of care to the Plaintiff Patient. As
prescribed by Massachusetts law, all health care providers and licensed physicians and nurses
are required to adhere to strict levels of quality medical care and treatment, and abide by these
requirements when treating a patient.  Since the Plaintiff Patient was in their care, they owed a
duty directly to him to perform and administer medical care ordinarily exercised by the average
qualified physician and nurse engaged in medical practice at a professional level

120.    It is herein alleged that in this matter Plaintiffs deviated from the reasonable and prudent
standard for the like in their profession including, but not limited to, following reasons:

    a.    Defendant's committed 59 instances of malpractice relating to the administration of
    Haloperidol, Olanzapine, Lorazepam yet failed to comply with the requirements of
    M.G.L. c. 123, §8B(d)-(f), which govern the standards required to administer
    antipsychotic medication.  Defendants unlawfully administered the drug Haloperidol no
    less than 26 times.  Defendants unlawfully administered the drug Olanzapine no less than
    4 times.  Defendants unlawfully administered the drug Lorazepam no less than 29 times.

121.    In addition to administering high-dose antipsychotic medications, South Shore Hospital,
South Shore Mental Health, and its physicians and nurses seriously deviated from commonly
accepted and safe medical practices when treating the Plaintiff.  Specifically, he was treated
against his will, not provided with informed consent for any of the treatments he received, held in

seclusion, chemically restrained, and experienced significant pain and discomfort.

122.    South Shore Hospital, South Shore Mental Health, and the named defendant physicians and

nurses working at both South Shore health care providers were negligent in their care and

treatment of the Plaintiff Patient, in that they all failed to treat him in accordance with the

standard of care and skill required of and ordinarily exercised by the average qualified physician

and nurse engaged in medical practice at a professional level, such as that in which the

defendant health care providers were engaged.

123.    As a direct result of the Defendant's negligence, Plaintiff Patient suffered significant

emotional distress, and still suffers today from long-lasting emotional distress.


### COUNT 5

### <u>VIOLATION OF RIGHT TO PRIVACY</u>

124.    Plaintiff realleges and restated all factual allegations contained in statements 1-123 herein.

125.    As codified by M.G.L. c. 214, § 1B, every person has a right to privacy, and to be free

from unreasonable, substantial or serious interference with that right.

126.    Throughout Plaintiff Patient's confinement and treatment at South Shore Hospital and South

Shore Mental Health, his right to privacy was breached.

127.    When South Shore Hospital and Medical Record Associates, LLC, sent Plaintiff's private

confidential medical information to an adverse party in a lawsuit, the Plaintiff was emotionally

distraught, and felt violated.

128.    This serious breach of the Plaintiff's right to privacy constitutes a violation of HIPAA, a

federal law purposed to protect a patient's privacy and confidential medical information.

129.    While HIPAA does not allow for a private cause of action, a violation of HIPAA can be the basis for a breach of right of privacy claim, and that may serve as strong evidence that the Patient's privacy was violated and that his claim has strong merit.

130.    In this case, both South Shore Hospital and Medical Record Associates, LLC, admitted their fault and negligence in sending confidential, private medical records to an unintended third-party, following specific requests to only send the records to Plaintiff.

131.    Further, the violation in this matter is made more egregious since the Defendants provided a full medical record history to an adverse party in litigation, and only provided 21 pages less of information to the actual requester and owner of the records.

132.    As a direct result of this negligence and violation of Plaintiff's right to privacy, Plaintiff was harmed and suffered damage.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, based upon the factual allegations above and the claims submitted, Plaintiff respectfully requests that this Honorable Court:

1.  TRY all factual issues and disputes, and all claims triable by a jury;

2.  AWARD the Plaintiff compensatory and actual damages to be determined by a Finder of Fact, against all defendants; and

3.  AWARD punitive damages based upon the egregious behavior of defendants in this matter and the harm that resulted.

## DEMAND FOR JURY TRIAL

Defendant respectfully demands a trial by jury on all triable issues.

RESPECTFULLY SUBMITTED,

Dated: January 2, 2014

Mr. Justin H. Nuland
By and through his attorneys,

Stefan J. Rozembersky, Esq.
BBO# 687062
**OLD NORTH LAW GROUP**
92 State Street, 8th Floor
Boston, Massachusetts 02109
Phone: 617-877-7388
Rozembersky.Esq@gmail.com

Alex R. Hess, Esq.
BBO# 679957
**SASSOON & CYMROT, LLP**
84 State Street, 8th Floor
Boston, MA 02109
Phone: 617-720-0099
ahess@sassooncymrot.com